James N. Scarff II
Attorney for Petitioner

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| Rupinder Singh Mann ) | |
| ) | |
| Petitioner, ) | |
| ) | **PETITION FOR WRIT OF** |
| v. ) | **HABEAS CORPUS** |
| ) | |
| DAVID EASTERWOOD, St. Paul Field Office ) | |
| Director, Immigration and Customs ) Enforcement ) | |
| and Removal Operations (ICE/ ) ERO); U.S. ) | |
| Immigration and Customs  Enforcement; KRISTI ) | |
| NOEM, Secretary of  the Department of Homeland  ) | |
| Security; U.S. Department of Homeland Security ) | |
| (DHS);  PAMELA BONDI, Attorney General of the) | |
| United States, and TODD LYONS, Director, ) | |
| Immigration and Customs Enforcement, ) | |
| ) | |
| Respondents. ) | |
| ) | |

## INTRODUCTION

Petitioner, Rupinder Singh Mann (Mr. Mann), is a citizen of India who Respondents have detained at the McCook Detention Center for six (6) months. He was granted relief at his removal proceedings and his detention is no longer reasonably related to its statutory purpose. Additionally, he was unlawfully denied bond because of the Respondents' failure to properly interpret and apply the Immigration and Nationality Act (INA). Because he is likely to face many additional months in detention, he seeks relief from this Court that would allow him to challenge his continuing, lengthy, and unconstitutional detention.

## JURISDICTION

1. Petitioner is in the physical custody of Respondents and Immigration and Customs

Enforcement (ICE), an agency within the Department of Homeland Security (DHS. He is detained at the McCook Detention Center in McCook Nebraska and is under the direct control of Respondents and their agents.

2. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

3. This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, clause 2 of the United States Constitution (the Suspension Clause).

4. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writes Act, 28 U.S.C. § 1651.

5. Nothing in the INA deprives this Court of jurisdiction, including 8 U.S.C. §§ 1252(b)(9), (f)(1), or 1226(e). Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839-41 (2018) (holding that 8 U.S.C. §§ 1252(b)(9) and 1226(e) do not bar review of challenges to prolonged immigration detention).

## VENUE

6. Pursuant to *Braden v 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the District of Nebraska, the judicial district in which the Petitioner is currently in custody.

7. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, and a substantial part of the events or omissions giving rise to her claims occurred in the District of Nebraska.

## REQUIREMENTS OF 28 U.S.C. § 2243

8. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

9. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

10. Petitioner is a citizen of India who most recently arrived in the United States on or about March 23, 2023. Petitioner is currently detained at the McCook Detention Facility. He is in the custody, and under the direct control, of Respondents and their agents.

11. Respondent David Easterwood is sued in his official capacity as the Director of the St. Paul Field Office of U.S. Immigration and Customs Enforcement. Respondent Easterwood is a legal custodian of Petitioner and has authority to release him.

12. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

13. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

14. Respondent Todd Lyons is the acting director of U.S. Immigration and Customs Enforcement, and he has authority over the actions of respondent David Easterwood and ICE in general. Respondent Lyons is a legal custodian of Petitioner.

## STATEMENT OF FACTS

15. Petitioner is a 35-year-old citizen of India. He fled to the United States from his home country due to harm he had suffered and was granted asylum by the immigration judge on November 24, 2025.

16. Petitioner entered the United States without inspection on March 23, 2023. On that date, DHS served the Petitioner with a Notice to Appear in immigration court.

17. DHS issued a Warrant for Arrest of Alien on August 17, 2025 and detained the Petitioner on the same day.

18. On September 17, 2025 the Immigration Court held a bond hearing in the Petitioner's case. The bond request was withdrawn after the immigration judge indicated they believed they did not have jurisdiction to issue a bond in the Petitioner's case.

19. On November 24, 2025, the Petitioner was granted asylum by the immigration court. DHS reserved appeal and the appeal is pending.

## LEGAL FRAMEWORK

Due Process Clause

20. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

21. Due Process requires that there be "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id*. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). In the immigration context, the Supreme Court only recognizes two purposes for civil detention: preventing flight and mitigating the risks of danger to the community. *Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 528. A noncitizen may only be detained based on these two justifications if they are otherwise statutorily eligible for bond. *Zadvydas*, 533 U.S. at 690.

22. "The fundamental requirement of due process is the opportunity be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). To determine what process Petitioner is due, this Court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Id*. at 335.

23. Due process also requires that a neutral decisionmaker consider available alternatives to detention. A primary purpose of immigration detention is to ensure a noncitizen's

appearance during removal proceedings. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. See *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). ICE's alternatives to detention program—the Intensive Supervision Appearance Program (ISAP)—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. See *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings"). It follows that alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

24. Due process likewise requires consideration of a noncitizen's ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if the individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release.'" *Id*. at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)). As a result, in determining the appropriate conditions of release for immigration detainees, due process requires "consideration of financial circumstances and alternative conditions of release" to prevent against detention based on poverty. *Id*.

25. Evidence about immigration detention and the adjudication of removal cases provide further support for the due process right to a bond hearing in cases of prolonged detention.

26. Immigration detainees face severe hardships while incarcerated. Immigration detainees are held in lock-down facilities, with limited freedom of movement and access to their families: "the circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord Chavez-Alvarez*, 783 F.3d at 478; *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo*, 825 F.3d at 1218, 1221.

"And in some cases[,] the conditions of their confinement are inappropriately poor." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Dept. of Homeland Security (DHS), Office of Inspector General (OIG), DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities (2017) (reporting instances of invasive procedures, substandard care, and mistreatment, e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee)).

27. These conditions and obstacles only further underscore the serious due process concerns that prolonged immigration detention poses for noncitizens like the Petitioner and reflect the need for a decision before a neutral decisionmaker regarding continued detention.

28. Here, the Respondents can not show that the continued detention of petitioner following his detention is reasonably related to the original purpose, as the Petitioner has been granted relief in the immigration court, and has no incentive to flee as he was granted asylee status in the United States.

**Immigration and Nationality Act**

29. Title 8 of the United States Code, Section 1221 et seq., controls the United States Government's authority to detain noncitizens during their removal proceedings.

30. The INA authorizes detention for noncitizens under four distinct provisions:

1) Discretionary Detention. 8 U.S.C. § 1226(a) generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings; however, permits those noncitizens who are not subject to mandatory detention to be released on bond or on their own recognizance.

2) Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c) generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

3) Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b) generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

4) Detention Following Completion of Removal Proceedings. 8 U.S.C. § 1231(a) generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. *Id*. at § 1231(a)(2), (6).

31. The instant case concerns the detention provisions at §§ 1226(a) and 1225(b)

32. Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

33. Following enactment of the IIRIRA, the Executive Office for Immigration Review drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of*

8

Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) ***will be eligible for bond and bond redetermination***") (emphasis added).

34. For nearly thirty years, the practice of the government, specifically ICE and Executive Office for Immigration Review, which operate under DHS, was that most individual noncitizens that were apprehended in the interior of the United States after they had been living in the U.S. for more than two years (as opposed to "arriving" at a point of entry, border crossing, or being apprehended near the border and soon after entering without inspection) received a bond hearing. If determined to not be a danger to the community or a flight risk and, as a result, granted a change in custody status, the individuals were released from detention either on their own recognizance or after paying the bond amount set by the IJ in full. 8 U.S.C. § 1226(a)(2)(A).

35. Recently, ICE has reversed course and adopted a policy of attempting to treat all individual noncitizens that were not previously admitted to the U.S. that are contacted in the interior of the U.S. at any time after their entry as "arriving" and ineligible for bond regardless of the particularities of their case. As a result, ICE is now ignoring particularities that have historically been highly relevant to determinations whether a noncitizen such remain or custody or be released—such as: when, why, or how they entered the U.S.; whether they have criminal convictions; whether they present a danger to the community or flight risk; whether they have serious medical conditions requiring ongoing care; whether U.S. citizen family members dependent upon them to provide necessary care; or, whether the noncitizen's detention is in the community's best interest. ICE now argues that the mandatory detention provision of §

1225(b)(2)(A) applies to all people who enter without inspection who are alleged to be subject to grounds of inadmissibility at § 1182.

36. As a result of ICE's interpretation and practice change, individual noncitizens, including long-time U.S. community members and even those who have had their particular circumstances reviewed and were ordered to be released upon posting bond by an IJ, continue to be detained by ICE and subjected to automatic stay provisions.

37. "The idea that a different detention scheme would apply to non-citizens 'already in the country,' as compared to those 'seeking admission into the country,' is consonant with the core logic of our immigration system." *Martinez v. Hyde*, CV 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)); see also *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025) ("the Court need not reach the outer limits of the scope of the phrase 'seeking admission' in § 1225(b)—it is sufficient here to conclude that it does not reach someone who has been residing in this country for more than two years, and that as someone 'already in the country,' *Jennings*, 583 U.S. at 289, [Petitioner] may be subject to detention only as a matter of discretion under § 1226(a)") (emphasis added).

38. The government's erroneous interpretation of the INA defies the plain text of 8 U.S.C. § 1226. The government's assertion that Petitioner is detained under § 1225—even though he was arrested and detained under § 1226—is meritless. Petitioner came to be in immigration proceedings based on a DHS filing that clearly identified him as subject to detention "pursuant to the authority contained in section 236"; (section 236 of the INA is codified at 8 U.S.C. § 1226.). For decades, § 1225 has applied only to noncitizens "seeking admission into the

country"—i.e., new arrivals. *Jennings*, 583 U.S. at 289. This contrasts with § 1226, which applies to noncitizens "already in the country." *Id*. at 289.

39. This new interpretation is now advanced by the government after decades of consistent use to the contrary. The government's position contravenes the plain language of the INA and its regulations and has been consistently rejected by courts. See, e.g., *Martinez*, 2025 WL 2084238; *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025). *See also* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (explaining that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

40. This new interpretation is inconsistent with the plain language of the INA. First, the government disregards a key phrase in § 1225. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ***seeking admission*** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, mandatory detention applies when "the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2.

41. The "seeking admission" language, "necessarily implies some sort of present tense action." *Martinez*, 2025 WL 2084238, at *6; see also *Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The use of the present progressive tense 'arriving,' rather than the past

11

tense 'arrived,' implies some temporal or geographic limit . . . ."); *U.S. v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of verb tense is significant in construing statutes.").

42. In other words, the plain language of § 1225 applies to immigrants currently seeking admission into the United States at the nation's border or another point of entry. It does not apply to noncitizens "already present in the United States"—only § 1226 applies in those cases. See *Jennings*, 583 U.S. at 303.

43. When interpreting a statute, "every clause and word . . . should have meaning." *United States ex rel. Polansky, M.D. v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). And "the words of the statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 588 U.S. 128, 141 (2019) (quotation omitted). The government's position requires the Court to ignore critical provisions of the INA.

44. Second, the government's interpretation would render newly enacted portions of the INA superfluous. "When Congress amends legislation, courts must presume it intends its amendment to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021). Congress passed the Laken Riley Act (the "Act") in January 2025. The Act amended several provisions of the INA, including §§ 1225 and 1226. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Relevant here, the Act added a new category of noncitizens subject to mandatory detention under § 1226(c)—those already present in the United States who have also been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E); 8 U.S.C. § 1182(a)(6)(A). Of course, under the government's position, these individuals are already subject to mandatory detention under § 1225—rendering the amendment redundant. Likewise, mandatory-detention exceptions under § 1226(c) are meaningful only if there is a default of

discretionary detention—and there is, under § 1226(a). See *Rodriguez*, 2025 WL 1193850, at *12.

45. Additionally, "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction, the court generally presumes that the new provision works in harmony with what came before." *Monsalvo v. Bondi*, 604 U.S. ___, 145 S. Ct. 1232, 1242 (2025). Congress adopted the Act against the backdrop of decades of agency practice applying § 1226(a) to immigrants like Petitioner, who are present in the United States but have not been admitted or paroled. *Rodriguez*, 2025 WL 1193850, at *15; *Martinez*, 2025 WL 2084238, at *4; 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.").

46. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." Removal hearings for noncitizens under 1226(a) are held under § 1229a, which "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

47. Until this year, DHS has applied § 1226(a) and its discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Salcedo Aceros*, 2025 WL 2737503, at *3.

48. The Government now contends that mandatory detention under § 1225 is the appropriate detention authority for noncitizens, such as petitioner, who have not been admitted or paroled. See *Rodriguez Vasquez v. Bostock*, et al. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) (citing *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)).

49. In recent weeks, several district courts have held that the Government's new, and more expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect on the basis that this reading of the statute would render 1226(c) inoperable or moot. See, e.g., *Rodriguez Vasquez v. Bostock*, et al. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025).

50. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States.

51. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to Petitioner.

## EXHAUSTION

52. Petitioner argues any further bond hearings or appeal to the BIA would be futile considering a September 5, 2025, BIA decision where the BIA adopted DHS' interpretation of the INA as mandating detention without bond for millions of noncitizens who reside in the U.S. See *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The BIA's decision held that immigration judges lack jurisdiction to hold bond hearings or grant bond to all individuals charged with entering the country without inspection. *Id*.

53. The Court should find administrative exhaustion would be futile. See *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 896 (9th Cir. 2021) ("where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required."). BIA decisions are binding on immigration judges, and *Hurtado* thus precludes an IJ from finding jurisdiction over noncitizens like Petitioner to hold a custody redetermination hearing. Therefore, judicial intervention enjoining Respondents from preventing petitioner from

having a bond hearing pursuant to the holding in *Hurtado* is necessary to enable petitioner to avail himself of his administrative remedies.

54. Therefore, the Court should consider the merits of the Petition.

**CLAIMS FOR RELIEF**

**COUNT 1: Violation of 8 U.S.C. § 1226(a) Unlawful Denial of Bond Hearings**

55. Petitioner herein incorporates all allegations and facts set forth in the paragraphs above.

56. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are subject to the grounds of inadmissibility because they previously entered the country without being admitted. Such noncitizens are detained under § 1226(a), unless they are subject to another detention provision, such as § 1225(b)(1), § 1226(c), or § 1231.

57. Nonetheless, the Omaha Immigration Court IJs have a policy and practice of applying § 1225(b)(2) to the Petitioner and did so during her bond hearing.

58. The application of § 1225(b)(2) to Petitioner violates the Immigration and Nationality Act.

COUNT 2: Violation of the Administrative Procedure Act Unlawful Denial of Bond

59. Petitioner herein incorporates all allegations and facts set forth in the paragraphs above.

60. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are subject to the grounds of inadmissibility because they originally entered the United States without inspection. Such noncitizens are

detained under § 1226(a), unless they are subject to another detention provision, such as § 1225(b)(1), § 1226(c) or § 1231.

61. Nonetheless, the Omaha Immigration Court IJs have a policy and practice of applying § 1225(b)(2) to Petitioner.

62. The application of § 1225(b)(2) to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

**COUNT 3: Unconstitutional Detention in Violation of the Fifth Amendment**

63. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

64. Civil immigration detention is only permissible where it bears a "reasonable relation to the purpose for which the individual was committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690. Those purposes are limited: preventing flight and protecting the community. *Demore v. Kim*, 538 U.S. 510, 528 (2003).

65. Neither community protection nor flight risk applies to the Petitioner, and therefore, the detention no longer bears a reasonable relation to the purpose for which it was committed. See *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690. Petitioner has prevailed in proceedings. There is no removal order. His removal is not imminent. To the contrary, Petitioner has been granted asylum in the United States by the Immigration Judge.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment,

(4) Issue a Writ of Habeas Corpus ordering Respondents release Petitioner from custody; hold a hearing if warranted; determine that Mr. Mann's detention is not justified because the government has not established by clear and convincing evidence that he presents a risk of flight or a danger to the community in light of the available alternatives;

(5) Issue an Order prohibiting the Respondents from transferring Petitioner from the district without the court's approval;

(6) Declare that Mr. Mann's continued detention is unconstitutional and unlawful, as it is not reasonably related to any valid purpose of immigration detention and violates the Fifth Amendment guarantee of due process;

(7) Declare that Respondents' conduct violates the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706, as arbitrary, capricious, and not in accordance with law;

(8) In the alternative, should the Court determine that immediate release is not warranted, order Respondents to provide Mr. Mann an individualized bond hearing before an impartial immigration judge within 14 days, at which the government bears the burden to justify continued detention by clear and convincing evidence;

(9) Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

(10) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

James N. Scarff II, #26245
Polaris Law Group
*Counsel for Petitioner*
Dated: February 2, 2026

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Rupinder Singh Mann, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 2nd day of February, 2026.

James N. Scarff II